Laura Each Nguyen, SBN 203141
Law Offices of Laura Each Nguyen, PC
2629 Townsgate Road, Suite 235
Westlake Village, CA  91361
Telephone: (818) 665-4083
Fax:  (818) 206-3230

Attorney for PLAINTIFFS
SINOFREIGHT LOGISTICS, INC.,
DBA SB FREIGHT

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT -- CALIFORNIA

| | |
|---|---|
| SINOFREIGHT LOGISTICS, INC., d.b.a. SB FREIGHT, a California corporation,<br><br>        Plaintiffs,<br><br>    vs.<br><br>KKW LOGISTICS, INC., a California corporation; and DOES 1 though 25, inclusive.<br><br>        Defendants. | Case No.: **2:14-cv-02117-MMM-MAN**<br> (Los Angeles Superior Court Case No: BC535875)<br>Hon.  Margaret M. Morrow<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR:**<br><br>**1.  Claim Pursuant to Carmack Amendment**<br>**2. Breach of Contract**<br>**3. Negligent Entrustment by Broker** |

        Plaintiff Sinofreight Logistics, Inc., d.b.a. SB Freight (hereinafter referred to as "SB FREIGHT" of "Plaintiff"), for causes of action against defendants and each of them alleges as follows:

## GENERAL ALLEGATIONS

        1.      This case presents a federal question jurisdiction, within the provisions of 28 U.S.C. sections 1331 and 1337, involving interstate carriage of goods under (a) the Carmack Amendment of the Interstate Commerce Act, 49

U.S.C. section 14706, the regulations thereunder, and the extensive case law thereunder (hereinafter referred to as the "Carmack Amendment"), and (b) Federal common law.  The amount in controversy exceeds $75,000, exclusive of costs and interest.  Plaintiff hereby demands trial by jury.

2.      Venue is proper in this District Court pursuant to 28 U.S.C. section 1391(b)(3) because Defendant KKW Logistics (hereinafter referred to as "KKW") filed its Notice of Removal to Federal Court in this District Court.

## GENERAL ALLEGATIONS AND PARTIES

3.      Plaintiff SB FREIGHT is a corporation existing under and by virtue of the laws of the State of California, and is qualified to do business in the State of California and the County of Los Angeles, and is in good standing with the Secretary of State of the State of California. SB FREIGHT maintains its principal place of business in the City of Industry, in the County of Los Angeles, California.

4.      Plaintiff is informed and believes, and thereupon alleges that KKW LOGISTICS, INC. ("KKW" or "Defendant"), is a California corporation engaged in the business of transportation and maintains its principal place of business in Pomona, California.  Plaintiff is informed and believes and based thereon alleges that Defendant KKW has two lines of business, (1) as a common carrier and/or shipper of goods and (2) as a broker of transportation services.

5.      The true names and capacities, whether individual, corporate, associate or otherwise of the defendants named herein as DOES 1 through 25, inclusive, and each and all of them are unknown to PLAINTIFF at this time, and PLAINTIFF therefore sues said defendants and each and all of them, by such fictitious names, and PLAINTIFF will advise this Court and seek leave to amend this Complaint when the names and capacities of each such defendant have been ascertained.  PLAINTIFF is informed and believes, and thereupon alleges that each said defendant herein designated as a DOE defendant is responsible in some manner for the events and happenings herein referred to, or as hereinafter alleged.

FIRST AMENDED COMPLAINT FOR DAMAGES

6.     PLAINTIFF is informed and believes and thereupon alleges, that at all times herein mentioned, each and every defendant, including DOES 1 through 25, inclusive, and each of them, was, were, and yet are the agents or employees of the other named defendants and each of them, that in so doing the things herein alleged said defendants, and each and all of them, were acting in within the course and scope of the authority conferred by, and with the consent of, each other defendant, and all of them jointly.

7.     In or about 2012, SB FREIGHT entered into a written contract with Defendant KKW, wherein KKW agreed to provide certain transportation services on behalf of SB FREIGHT and SB FREIGHT's customers.  KKW specifically represented itself as a carrier and agreed to transport the goods.

8.     As a direct and legal result of Defendant's agreement to provide transportation services requested of it by the Plaintiff, Plaintiff agreed to pay for said services pursuant to the agreed upon credit terms  and subject to the rates in effect at the time of service ("Agreement").  A true and correct copy of the Agreement is attached as Exhibit "A" and is incorporated by reference.

9.     The contract between SB FREIGHT and KKW specifically delineated that KKW would be providing transportation services, including the hauling of freight as a common carrier.  Under the contract, SB FREIGHT acting as a transportation broker would tender shipments to KKW, and KKW acting as a common carrier, would truck the shipments to their designated destinations.  The contract required KKW to provide SB FREIGHT with advance notice if KKW did not have the resources to haul a tendered shipment and the contract specifically prohibited any and all double brokering of the load without written consent from SB Freight.

10.     Plaintiff is informed and believes and based thereon alleges that on June 26, 2012, and pursuant to the terms of the transportation contract, SB FREIGHT tendered a load of VIZIO-branded televisions to KKW.  SB FREIGHT

FIRST AMENDED COMPLAINT FOR DAMAGES

tendered the load to KKW with the expectation that KKW, in its capacity as a common carrier and pursuant to the terms of the transportation contract, would pick-up the freight from VIZIO's warehouse in Ontario, California and transport the freight to a Costco facility in Florida.  A true and correct copy of the dispatch sheet for the subject load is attached and incorporated by reference as Exhibit "B."

11.     Plaintiff is informed and believes and based thereon alleges that without any notice to SB FREIGHT and in breach of the transportation contract between the parties, KKW tendered the load (*i.e.*, double-brokered the load) to an unlicensed, uninsured carrier who then picked up the load and failed to deliver it as scheduled.  Said load has since disappeared and is presumed stolen.

12.     Plaintiff SB FREIGHT is the beneficial owner of the load is question and any and all others rights in the cargo have been assigned to SB FREIGHT from VIZIO.

13.     After the load disappeared, Plaintiff filed a claim with Defendant KKW for the value of the load.  However, Defendant denied the claim.

## FIRST CAUSE OF ACTION
### (Liability Pursuant to the Carmack Amendment)
### Against All Defendants

14.     By this reference, PLAINTIFFS herein incorporates each and every allegation of paragraphs 1 through 13, inclusive of the General Allegations of this Complaint as if the same were set forth in full herein.

15.     At all relevant times, the Interstate Commerce Act 49 U.S.C. Section 14706, provides in pertinent part:  "A carrier providing transportation… shall issue a receipt or bill of lading for property it receives for transportation… That carrier and any other carrier that delivers the property … are liable to the person entitled to recover under the receipt or bill of lading.  The liability imposed under this paragraph is for actual loss or injury to the property caused by (A) receiving carrier;  (B) delivery carrier; or (C) another carrier…." This provision of federal

law governs the shipment of the electronics by Defendants as set forth in Plaintiffs' Complaint.

16.     On or about May 10, 2012, SB Freight on the one hand, and Defendants entered into an agreement whereby Defendant KKW agreed to carry, transport and/or safely deliver certain goods (the "Cargo") to a certain recipient in Florida, and there deliver same in like good order and condition the aforementioned Cargo in consideration of certain agreed upon freight charges thereupon paid or agreed to be paid.

17.     On or about June 26, 2012, Defendant KKW received the Cargo for shipment pursuant to a bill of lading.

18.     Thereafter in breach of and in violation of said agreements, Defendant KKW did not deliver said Cargo in the same good order, condition, and quantity as when received at Los Angeles, or in any condition at all.  To the contrary, Defendant KKW failed to deliver the Cargo.  The reasonable value of the non-delivered cargo was $140,055.45.

19.     The failure to deliver the Cargo resulted from the negligence of Defendant KKW.

20.     Defendant KKW is strictly liable for their failure to deliver the Cargo.

21.     The failure to deliver the Cargo was not caused by any of the following factors:  (a) an act of God; (b) any inherent nature or vice in the Cargo; (c) any act of Plaintiff; (d) any act of a public enemy; or (e) any authority of law.

22.     Plaintiff has performed all conditions, covenants and promises required by it to be performed in accordance with the terms and conditions of the agreement, except those obligations that plaintiff was prevented or excused from performing.

23.     Plaintiff has complied with or has been excused from complying with the applicable claims requirements.

FIRST AMENDED COMPLAINT FOR DAMAGES

24.    Although Plaintiffs damages were liquidated and reasonably ascertainable by Defendants, Defendant has unreasonably and vexatiously delayed payment of this claim and Plaintiffs are entitled to prejudgment interest, at the rate of 10% or other such rate as this Court shall determine.

25.    As a result, of Defendants failure to deliver the cargo timely and each of them, PLAINTIFFS has been damaged in the sum of $140,055.45 and more according to proof.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

### Against All Defendants

26.    By this reference, PLAINTIFFS herein incorporates each and every allegation of paragraphs 1 through 25, inclusive of this Complaint as if the same were set forth in full herein.

27.    In or about 2012, SB FREIGHT entered into a written contract with Defendant KKW, wherein KKW agreed to provide certain transportation services on behalf of SB FREIGHT and SB FREIGHT's customers.

28.    The contract between SB FREIGHT and KKW specifically delineated that KKW would be providing transportation services, including the hauling of freight as a common carrier.  Under the contract, SB FREIGHT acting as a transportation broker would tender shipments to KKW, and KKW acting as a common carrier, would truck the shipments to their designated destinations.  The contract required KKW to provide SB FREIGHT with advance notice if KKW did not have the resources to haul a tendered shipment and the contract specifically prohibited any and all double brokering of the load without written consent from SB Freight.

29.    Plaintiff is informed and believes and based thereon alleges that on June 26, 2012, and pursuant to the terms of the transportation contract, SB FREIGHT tendered a load of VIZIO-branded televisions to KKW.  SB FREIGHT

FIRST AMENDED COMPLAINT FOR DAMAGES

tendered the load to KKW with the expectation that KKW, in its capacity as a common carrier and pursuant to the terms of the transportation contract, would pick-up the freight from VIZIO's warehouse in Ontario, California and transport the freight to a Costco facility in Florida.  A true and correct copy of the dispatch sheet for the subject load is attached and incorporated by reference as Exhibit "B."

30.    As a direct and legal result of provide transportation services requested of it by the Plaintiff and Plaintiff agreed to pay said services pursuant to agreed upon credit terms  and subject to the rates in effect at the time of service ("Agreement").  A true and correct copy of the Agreement is attached as Exhibit "A" and is incorporated by reference.  Said Agreement further required that Defendant KKW provide notice if it was unable to provide the services directly. The Agreement further barred any double brokering of the load without written consent from Plaintiff.

31.    Plaintiff is informed and believe and based thereon allege that on or about June 26, 2012, Defendant KKW brokered out the load to unknown third parties without any notice to Plaintiff and in breach of the agreement. Furthermore, the entity that KKW brokered the load to was neither licensed or insured and was actually a sham carrier.  Said sham carrier converted the load for its own purposes.

32.    On or about August 8, 2012, Plaintiff demanded KKW indemnify Plaintiff and Plaintiff's client for the value of the load and KKW refused to do so in breach of the contract.

33.    On or about December 2012, SB Freight paid its client, Vizio, for the value of the load and Vizio assigned all rights to the property to SB Freight.

34.    Plaintiff performed all conditions covenants, and promises required of it under the Agreements.

35.    Yet on or about June 2012, and continuing to date, the Defendants and DOES 1 through 25, and each of them, breached the Agreement by failing to pay

FIRST AMENDED COMPLAINT FOR DAMAGES

$140,055.45 due under the Agreement for the value of the load.  The Defendants refused to pay $140,055.45, alleging that they were not the Carrier for the load, but simply a broker.

## THIRD CAUSE OF ACTION

### (Broker Liability for Negligent Entrustment)

### Against All Defendants

36.     By this reference, PLAINTIFFS herein incorporates each and every allegation of paragraphs 1 through 35, inclusive of this Complaint as if the same were set forth in full herein.

37.     Plaintiffs are informed and believe and thereon allege that at all times and places wherein mentioned defendant KKW entered into a contract with Plaintiff SB Freight, wherein KKW agreed to transport freight on behalf of SB Freight and its customers.  Plaintiff is informed and believes and based thereon alleges that Defendant KKW has asserted that it was not the carrier of said goods, but the broker.

38.     Plaintiff is informed and believes and based thereon alleges that on or about June 26, 2012, KKW accepted a contained filled with electronics for transport between California and Florida.  However, instead of transporting said cargo with its own equipment and employees KKW brokered the load to an unknown third party carrier.

39.     Defendant KKW owed a duty to Plaintiff to notify Plaintiff if it was unable to transport the load with its equipment.  Furthermore, Defendant KKW owed a duty to Plaintiff to select a qualified, proper, reputable and or otherwise responsible motor carrier.  Defendant KKW also owed a duty to Plaintiff and its customers to select a carrier that was licensed and insured.

40.     Plaintiffs are informed and believe that Defendant KKW failed to ensure that the unknown third party broker was licensed and insured.  Defendant

FIRST AMENDED COMPLAINT FOR DAMAGES

KKW further failed to take any steps to ensure that said unknown third party carrier was qualified, proper, reputable, or an otherwise responsible motor carrier.

41.   Plaintiffs are informed and believe that Defendant KKW breached the aforementioned duty of care by selecting a broker that was not licensed, insured, and/or bonded.  Defendant KKW further breached the aforementioned duty of care by failing to select a qualified, proper, reputable and/or otherwise responsible motor carrier.

42.   As a direct and proximate result of Defendants negligent entrustment of the load to an unqualified and dishonest carrier, the cargo in question was stolen by said unknown third party carrier.

43.   By reason of said negligence and theft, and as a proximate result thereof, plaintiffs suffered property damage in the amount of at least $140,055.45.

44.   As a result, of Defendants breach of the duty of care and each of them, PLAINTIFFS has been damaged in the sum of $140,055.45 and more according to proof.

## ON ALL CAUSES OF ACTION

1.   For damages in the sum of $140,055.45 and more, according to proof.

2.   For prejudgment interest on said sum at the maximum legal rate;

3.   For reasonable attorneys' fees;

4.   For costs of suit incurred by PLAINTIFFS herein; and

5.   For such other and further relief as this court may deem just and proper.

Dated: April 14, 2014        ___/S/ Laura Each Nguyen_____ _____
                              Laura Each Nguyen
                              Attorney for PLAINTIFF

1
2
3
4
5
# EXHIBIT A
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED COMPLAINT FOR DAMAGES

## CARRIER-BROKER AGREEMENT

THIS AGREEMENT is made this _1.9_ day of _MAY_ _2012_ by and between SB Freight, a California corporation, hereinafter referred to as "Broker", MC# 718500, and

_____ hereinafter referred to as "Carrier", MC# _722493_

The BROKER and the CARRIER have, upon due consideration, determined that a contract sales agreement is to their mutual advantage and best interest, they hereby agree to the following terms and conditions:

1. **OBLIGATIONS OF BROKER.** Broker agrees to tender commodity shipments to Carrier for transportation in interstate commerce by Carrier between points and places within the scope of Carrier's operating authority as directed by the Broker. **Compensation**-Broker agrees to pay Carrier upon Broker's receipt of a bill of lading showing proof of delivery of each shipment to its assigned destination, free of damage or shortage. The amount to be paid by Broker to Carrier shall be established between Broker and Carrier on a per shipment basis prior to the commencement of each individual shipment.

2. **OBLIGATIONS OF CARRIER.** Carrier shall use its best effort to provide adequate transportation services to meet the needs of Broker and to deliver each shipment promptly and efficiently.. Carrier agrees to furnish suitable trucks, tractor, and semi-trailer, at its own expense, to haul each shipment of commodities. Carrier agrees to assume all costs, expenses and liabilities incidental to the transportation of such commodities, including but not limited to, all costs, expenses, and liabilities incidental to or arising out of maintenance, repair or operation of the equipment, labor, fuel, supplies, insurance, and /or accidents. Carrier agrees at all times to save and hold Broker harmless from any an all such costs, expenses or liabilities. Carrier may not use equipment other than its own without first notifying Broker. In the event the Carrier is unable to supply transportation service within the time requested by the Broker, it shall so advise the Broker and may arrange to furnish said transportation at a later date; or the Broker, if it desires, may elect to avail itself of the services of another Carrier, legally qualified to serve said Broker or its customers. Carrier shall maintain satisfactory U.S. DOT safety ratings. **Carrier moving perishables:** Carrier agrees to inspect or hire a service representative to inspect a vehicle's refrigeration or heating unit and retain the records of the inspection for at least one year. Copies of these records must be provided upon request to the carrier's insurance company and Broker. Carrier agrees to maintain adequate fuel levels for the refrigeration or heating unit and assume full liability for claims and expenses incurred by the Broker or the shipper for failure to do so.

3. **RATES AND CHARGES.** Rates may be established or amended verbally on a per truckload basis in order to meet specific shipping schedules, as mutually agreed. Broker will immediately confirm rates and other pertinent load information to the carrier by facsimile machine. If Carrier doesn't have a facsimile machine, a copy will be mailed to the carrier's mailing address. In order to remain binding between parties and to meet the reduced-to-writing requirement, the Carrier's freight bill to the broker, reflecting the agreed upon rate, will fulfill this requirement. The facsimile hard copy and the Carrier's freight bill will become Addendum B and C to the contract.

4. **BILL OF LADING.** Carrier shall issue and sign a standard bill of lading acceptable to the Broker and underlying shippers on acceptance of goods. All such documents shall show the consignor and consignee, and the Carrier's name shall be shown on the bill of lading as the carrier of record. Unless otherwise agreed in writing, Carrier shall become fully responsible and liable for the freight when it takes and receives possession thereof, and the trailer(s) is loaded, regardless of whether a bill of lading has been issued, and/or signed and/or delivered to Carrier, and which responsibility/liability shall continue until delivery of the shipment to the consignee and the consignee signs the bill of lading or delivery receipt. Any terms of the bill of lading (including but not limited to payment terms, released rates or released value) inconsistent with the terms of this Agreement shall be ineffective

Initials _____

**Page 1 of 3**

5. **INSURANCE.** Carrier shall furnish to Broker in the form and manner satisfactory to Broker, a certificate of insurance setting forth that Carrier maintains primary public liability and property insurance coverage as well as cargo insurance. Certificate Holder and Additional Insured on the auto AND cargo should be: Shofreight Logistics, Inc. dba: SB Freight, 17380 Colima Rd, Rowland Heights, CA 91748, Fax # 626-369-6633. Carrier maintains Auto Liability Limits not less than $1,000,000 CSL and $250,000 per unit limit - Motor Truck Cargo. If the policy is written on a scheduled unit basis, please list the year/make/ID# and driver name of each unit insured. Additional insured endorsement from the auto liability and cargo insurance carriers should be received within 60 days. Cargo certificate should reflect any and all policy wording that would restrict coverage including but not limited to radius restrictions, unattended endorsements, locked vehicle warranties, commodity restrictions, etc. Said insurance policies shall provide that they may not be cancelled without thirty (30) days written notice to Broker.

6. **INDEMNITY.** Carrier agrees to defend against and hold harmless Broker/Shipper/ Receiver from any and all loss or damage to each shipment transported by it pursuant to this Agreement. Carrier further agrees to defend and hold harmless Broker/Shipper/Receiver from any and all liability costs and damages to persons and /or property arising out of Carrier's negligence, including, but not limited to, all road, fuel and other taxes, fees or permits related to the shipments transported by it as arranged by Broker/Shipper/Receiver.

7. **AGENCY REGULATION.** Carrier agrees to transport all commodities pursuant to this agreement in accordance with the rates, charges, rules, and regulations established by applicable federal or state agencies and all claims for loss or damage and any salvage arising there from shall be handled and processed in accordance with the regulations as published in the Code of Federal Regulations 49 C. F. R. 1005)

8. **INDEPENDENT CONTRACTOR.** The relationship of the BROKER and the CARRIER shall, at all times be that of an independent contractor, except that the BROKER shall be an agent for the CARRIER for the collection of charges, when the shipper pays the BROKER.

9. **NO BACK SOLICITATION.** Carrier shall not solicit traffic from any shipper, consignor, consignee, or customer of Broker, including but not limited to all where (1) the availability of such traffic first became known to Carrier as a result of Broker's efforts, or (2) where the traffic of the shipper, consignor, consignee, or customer of the Broker was first tendered to the Carrier by the Broker. If Carrier breaches this Agreement and "back-solicits" the Broker's customers and obtains traffic from such customer or customers, then Carrier shall be obligated to pay Broker a commission equal to twelve percent (15%) of the gross transportation revenue received by Carrier from the movement of said traffic.

Carrier's obligation to pay said obligation shall last for a period of twelve (12) months following the month in which Carrier first moved traffic for said customer not brokered by SB Freight. Carrier agrees that delivery of a copy of this Agreement shall constitute a valid assignment of the percentage of Carrier's gross payments received from customer as stated above. This Agreement shall serve as a directive authorizing customer to pay said commission directly to Broker

10. **CONFIDENTIALITY:** In addition to Confidential Information protected by law, statutory or otherwise, the Parties agree that all of their financial information and that of their customers, including but not limited to freight and brokerage rates, amounts received for brokerage services, amounts of freight charges collected, freight volume requirements, as well as personal customer information, customer shipping or other logistics requirements shared or learned between the Parties and their customers, shall be treated as Confidential, and shall not be disclosed or used for any reason without prior written consent.

Initials _____

**11. DOUBLE BROKERING OUR FREIGHT** ... written consent of broker. Carrier shall not ... motor carrier or in substituted service by other CARRIER without the express written authorization of ... immediate cancellation of our AGREEMENT ... becomes known to BROKER prior to the payment ... settlement directly to the carrier actually transporting the ... CARRIER and then subcontracting the load to a third party ... of that load and acceptance of the conditions of this policy. Payment will be made directly to the CARRIER actually performing the transportation service.

**12. ACTS OF GOD** Neither party hereto will be liable for the failure to render timely transport freight under this Agreement if such failure, delay or other omission is caused by strikes, act of God, war, accidents, civil disorder, or through compliance with legally constituted order of civil or military authorities.

**13. TERMS OF THE AGREEMENT** This agreement is to become effective _____ and shall remain in effect for a period of one (1) year from such date and shall continue in effect from year to year unless and until terminated by either party upon not less than thirty (30) days prior written notice to the other, delivered personally or mailed to such party at the address set forth below.

Both parties agree to the terms and conditions outlined above.

CARRIER:                          BROKER:   88 FREIGHT
                                            17380 COLIMA RD #370
                                            ROWLAND HEIGHTS, CA 91748

Signature: _____        Signature: _____

Title: _____            Title: _____

Page 3 of 3

1
2
3
4   EXHIBIT B
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED COMPLAINT FOR DAMAGES

- DISPATCH SHEET

Page 1 of 2



**SB Freight**

SB Freight
900 Turnbull Canyon Road
City of Industry CA 91745
Email: dispatchb@sbfreight.com
Tel: 626-626-8960
Fax: 626-626-8961

**Mailing Address**
900 Turnbull Canyon Road
City of Industry, CA 91745
Phone: 626-626-8962
Fax: 626-626-8961

(818) 434-2781

Picked Up

## Dispatch Information
For carrier reference only – not intended for shipper

**Carrier Information**
KKW LOGISTICS, INC.
Check Call Contact: Mark
Phone: 909-869-1260
Fax: 909-869-1260

Contact: Yolanda Medrano
Load #: 12240    Pickup #: 111443837
Ship Date: 6/28/2012
Ready: 11:00 AM Close: 12:00 PM
Delivery Date: 7/2/2012 11:30 AM

**Shipper Information**
Vizio Inc-CDL
1495 E locust St
Ontario, CA 91761
Phone: 909-740-3820
Phone numbers provided for carrier convenience
Contact:

**Consignee Information:**
Costco Depot #174
5851 45th Street
West Palm Beach, FL 33407
Phone: 561-273-2520
Phone numbers provided for carrier convenience
Contact:

Shipper No: 111443837
PO Ref: 1740622399
Pro No: 8500299792
Additional Services:

**3RD PARTY BILL FREIGHT PREPAID TO:**
**SB Freight**
900 Turnbull Canyon Road
City of Industry, CA 91745

| Shipping Units | HM* | Kinds of Packaging, Description of Articles Special Marks and Exceptions | CLASS | WEIGHT |
|---|---|---|---|---|
| 17 Pallets | | 170 pcs | N/A | 16000 lbs |
| 17 Pallets - on 17 Pallets (48 x 48) | | | 34 Ln ft | |
| | | Shipment Value Not Specified. | Total Weight: 16000 | |

**Carrier Charges:**
Shipping Charges    $4,900.00
Total: $4,900.00

**Additional Notes:**
Full Truck load

**There will be a fee for cancelled shipments.**

This rate quote is based on the information you provided when you requested your rate quote. Please review the shipment information for accuracy. Additional charges may apply for extra services, such as changes in product classification or increased weight. If you have any questions about this quotation please contact your sales representative or email us at dispatchb@sbfreight.com. Our goal is to provide you with the most accurate billing in the transportation industry. Please refer to the notes below.

1. Carrier will bill SB Freight directly for all services provided unless otherwise agreed to in writing.

2. Freight charges will be submitted to SB Freight with a bill of lading and will be paid within 30 days of receipt of freight bill.

3. Carrier will be responsible for verifying piece counts at the time of pick up. Discrepancies will be reported within 48 hours of pick up. Notations such as STC (said to contain) and SWP (shrink wrap pallet) will not insulate carrier from liability in the event of a cargo claim.

4. Carrier agrees to provide cargo insurance in the amount listed above and a minimum of $100,000 to compensate owner of property in the event of loss or damage. Carrier also agrees to provide a current certificate of cargo insurance with SB Freight named as the certificate holder. In the event of a cargo claim, carrier will be liable for the full invoice value of the loss.

5. Transportation services requested herein will be provided by the carrier named above. This shipment may not be tendered to another carrier, brokered out, sub hauled, etc. without written consent by SB Freight. Carrier specifically agrees that all freight tendered to it under this agreement shall be transported on equipment operated only under the authority of the Carrier and shall not in any manner sub contract, broker, or in any other form arrange for the freight to be transported by a third party.

6. Shipment will be delivered on a non revenue bill and in no case will freight charges be accessible to anyone other than SB Freight.

7 Carrier will not solicit freight from any parties to this shipment for a period of six (6) months. Carrier acknowledges that this constitutes a "No back solicitation clause".

8. Carriers consent to pick up shipment acknowledges and constitutes carriers acceptance of the terms and conditions outlined herein.

http://brokerware.3plsystems.com/App_BW/docs/print_dispatch.aspx?sc=83483B83B849...    6/27/2012

Exhibit B

- DISPATCH SHEET

9. All cargo claims will be presented to carrier within nine (9) months of delivery, expected delivery, or loss or damage. Concealed damage claims will be reported to the carrier within 15 days of delivery. Carrier agrees to acknowledge and respond to claims presented in a timely manner in accordance with guidelines established in NMF 100.

10. Carrier agrees to deliver freight and adhere to transit times requested herein. In the event of delay, carrier will notify SB Freight in writing of any anticipated service failures 24 hours in advance of the originally expected delivery date.

11. The venue and jurisdiction for any dispute arising from this agreement and/or relationship between SB Freight and other parties to this agreement, including but not limited to disputes over individual shipments, shall be brought in the courts in the local district of SB Freight.     Printed on Wednesday, June 27, 2012

Accepted: _____          Date: _____

Load #: 12240